Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. Judge Jill Pryor and I are pleased to be sitting again this morning with our colleague from the Middle District of Georgia, Judge Tripp Self. Judge Self has been on the district court now for a few years and previously served as an appellate judge on the Georgia Court of Appeals. And so he has some familiarity with our kinds of processes, although maybe not exactly the same. And we have a longstanding tradition in our circuit of inviting district judges from our own circuit after they have been on the district court for a couple of years to participate with us in oral argument. It gives them an opportunity to see how we review their work and us an opportunity to hear what they think about how our precedents play out on the ground and gives us an opportunity to know each other better. We particularly appreciate him assisting us with our work over and above the work that he already has as a district judge. So thank you Judge Self for helping us this week. It has been a privilege, Chief. I wanna thank you and Judge Pryor for your help and particularly your staff. Your IT staff has made this work and they've been helpful. So if you'll reach out to Brian, let him know how much I'm grateful for making this, but thank you again, it's a pleasure. Thank you very much. Yeah, we're not inviting judges from other circuits anymore to help us with our work. We have enough judges and our caseload is now manageable enough to where we can do it on our own, but it is helpful to have district judges on a few days of the year to assist us with our work. We only have two appeals to hear this morning. Counsel, we're familiar with your cases. We've read your briefs, the authority cited in your briefs, at least portions of the record. So we know what your case is about. You can feel free in the limited time that is available to you to go straight to the heart of your argument. We're probably gonna have some questions this morning. Be mindful of the clock though. If your time expires, it is time to wrap it up. If you're answering a question from the court, of course, you can feel free to finish your answer. And if you have some rebuttal time, you don't have to worry about losing any of that because you're answering a question from the court. You will be on our time, not yours. So our first case this morning is Aspillare versus the Attorney General, Mr. Vasteen. Will you speak with us, please? Yes, good morning, your honors. Michael Vasteen of St. Thomas University School of Law for Petitioner Rubens Aspillare, and may it please the court. The BIA below erroneously found Mr. Aspillare deportable under the theory that his Florida conviction for felon in possession of a firearm necessarily was the equivalent of a federal firearms offense and that equivalency is required to trigger deportability under 8 U.S.C. 1101A43C. So the court's task is to decide whether Florida prosecutes more weapons as quote, firearms than the federal government can under federal law. And to do this, we need to use the categorical approach of Mathis and Moncrieff to compare the elements of the Florida and the federal offenses. When I look at this case, it seems to me you've got three problems. One is the week's decision. One is the failure to present exemplar prosecutions, which albeit in dicta, the Supreme Court said, it's the Supreme Court dicta said is necessary. And even in the event that you don't have to do that, it seems to me that there's really no difference between the antique firearms exceptions under Florida law and federal law. One focuses on the propellants, the other focuses on the ignition system, but they lead you, if you have any knowledge whatsoever of how these work, they lead you to the same conclusion. Okay. Your Honor, respectively, I didn't catch your first point, but I can, but I got some examples in the note and the note distinctions. Well, the first one was weeks. Weeks, okay. And those are interrelated. So I'll do my best to make our points. Looking at the language of the statute, we see that Florida does not have this muzzle load exception that the federal government has. And it also has this other trick to it that the federal government does not have in that if an otherwise qualifying antique is used in an offense, it loses its exceptional status. So it becomes treated as a firearm. And of course that's not what happens under the federal statute. And so weeks, we're operating in a new world since September 22nd of 2016, when the Florida Supreme Court changed 30 years of Florida precedent in weeks. And weeks did a couple of things. And the root, but most explicitly, it overruled a 1986 case called Williams. And it also overruled a 2005 district court case that controlled the Florida trial courts up through the time of Mr. Aspelier's conviction. And that case was called Bostic. So what Williams showed was... Well, here's the problem I have. As I understand the way judicial decision-making, that's retrospective. Our judgments don't operate prospectively only like legislation. And so to the extent that the Supreme Court of Florida has said that its earlier decisions were incorrect and therefore overruled, what they are saying is that's not the law and it never has been. That's never been a correct interpretation of the law. Yes, and so the government attempts to make that point as well. And of course we dispute it. What we know is that the Supreme Court first interpreted the statute in 1986 and set up a system in which they explicitly said that they do not believe the Florida legislature intended a convicted felon could be acquitted by using the excuse that the weapon is an antique. And so henceforth in Florida until September, 2016, defendants were prosecuted in a scheme in which antique firearms counted as firearms, again, different than the federal statute. And so getting directly to your point on retroactivity, we take issue, as I'm sure you saw in the brief with the government's position that weeks would run retroactively. Why? Because it would be contrary to all settled expectations of any defendant to know what the law was at the time of their conviction so that they could properly defend themselves. Of course, we're not a country of ex post facto laws and the US Supreme Court in Landgraf in 1994. The statute didn't change, right? The statute didn't change. And then when the state Supreme Court renders a decision that overrules an earlier decision, that's retrospective. And judicial decisions aren't subject to the ex post facto clause, are they? Well, the, I guess a couple of points. I mean, that would be, again, the idea from Landgraf would be that, I've got the quote that says, elementary considerations of fairness dictate that the legal effect of conduct should be assessed under the law that existed when the conduct took place. And that concept has timeless and universal appeal. Also in other immigration contexts, that's exactly what happens. The US Supreme Court in Mullooly v. Lynch referenced the BIA's decision in Matterpolis for the same sort of principle, which is when you're figuring out whether a state-controlled substance triggers an immigration effect, you compare the state list of controlled substances to the federal list of controlled substances at the time of conviction. Otherwise, you've got this moving target. And under the government's idea, I guess under the court's, what I hope is hypothetical, Mr. Aspelair would be both, he would be harmed under a broader system of law at the time of conviction. And then a couple of years later, he would be harmed differently under a new concept of law in removal proceedings. And why is that important? The state, the Florida was between its legislature and it's, and again, this is a case of statutory interpretation. They're saying what the legislature said. It set up a system in which the elements of what is a firearm is broader than the federal definition. And that overbreadth is key to the case. And so sometime a couple of years, several months after Mr. Aspelair is convicted, it changes the game. It says from here on out, we know we've had this system since 1986 where antique and inoperable and muzzle loaders and antique muzzle loaders that have scopes. Everyone's been getting convicted of that in Florida. We're not gonna do that anymore. So they've created a system that is, that now is quite, and it's much more in line with the federal system to apply that retroactively to 30 years of people that were prosecuted. It only benefits defendants, right? It would benefit a Florida defendant now who would be under the current scheme. And like Mr. Bostic. It benefited someone before. I mean, from the moment they just said, yeah, there really is an antique firearm exception, that benefits defendants, doesn't it? Well, it's starting on September 22nd, 2016, it did. Because they had to take up the issue in reverse weeks. Why? The federal government. Because it was wrong. It was an incorrect statement of the law. The legislature didn't change the law. Only the judiciary just said, we've gotten it wrong. Yes, they had. And- Mr. Bastine, assuming that weeks is controlling, are there any muzzle loading type weapons that would not qualify as replicas under Florida law? Because when I look at the photo of the muzzle loading weapon that was at issue in weeks, it looks pretty modern to me. Okay. So we had two different photos there. So what we had put out, the weeks one was a replica of like a frontier model. It was specifically supposed to be, for lack of a better word, old school. And whereas Mr. Bostic had what is a modern, more advanced muzzle loader, because they mentioned the models in their cases. And so in Florida, until weeks came out, you had a better argument, that is until weeks was decided by the Supreme Court, there was a better argument that these sort of retro models of muzzle loaders would be covered. Why? Because it was covered in the other parts of the Florida exception, as being like a pre 1918 model, or a pre 1918, replica of a pre 1918 model. And so- Nobody changed that, didn't it? I'm sorry? If you're assuming we're under weeks, which is what I asked you to assume, the weapons don't have to look like antique guns. Isn't that right? Right, and that's how it works under the federal statute. A gun like what Bostic had all along would have never been treated as a firearm under the federal because the federal standard has always exempted all muzzle loading weapons. And that's our point, that Florida became more in line with that in 2016, six months after the conviction. I see I'm out of time. Are there any other questions from anyone? Okay, you've saved some time for rebuttal, Mr. Basting, five minutes. Let's hear from Mr. Bates. Good morning, your honors. This case presents the question whether a felon in possession of a firearm under Florida law qualifies as an aggravated felony under the INA. And the board ruled properly that it does. Now I'll jump right to the firearms exception or the antique firearms exception that we've been discussing. Under Moncrief, petitioner must show over breadth of the statute. And there are a variety of ways of showing it. One of them is to show definitively on its face that it's overbroad, which hasn't been done in this case. The other way is to show through an exemplar prosecution that it's overbroad and that hasn't been done at least in light of weeks. Now, of the two points that are made, the first one is that weeks held that AUSTIC somehow impacts where there's a retroactivity argument with BASTIC. The problem, setting aside the fact that as was correctly stated, a judiciary decision generally is prospective and retroactive both. It's not late and it's not even like a board decision. A board decision arguably is quasi-legislative. So there's more retroactivity issues with that. This is a judicial decision that clearly said the law was wrong. The other part of that goes to reliance interests. And I don't think the law was that settled even at the time of Mr. Escolar's conviction. All this stuff occurred in 2012. We have the BASTIC decision on the books where you had a dissenting judge saying he doesn't believe that was a law. And you have the actual underlying weeks decision started in 2012. And that decision showed people were researching this and actually believing that their modern replica with black powder suffice under Florida's anti-firearms law. And that was even post BASTIC, that was in 2012. So the law was far from settled. So I don't think that there's much of a retroactivity argument. It doesn't really matter. Weeks settled, right? Right, right. I mean, I'm just sort of adding to the point where I don't think the law was that settled. I'm not trying to belabor it, I apologize. I mean, what difference would it make even if it were unsettled? It wouldn't. That's true, your honor. The other issue has to do with the antique firearms exception. And Florida has that last line in it that talks about if it's used in the commission of a crime, then the antique firearms exception doesn't apply. And that is one of those cases where arguably, arguably the statute is overbroad, but you need to show a case where it's applied that way. And the reason being the statute that he was convicted under was a possession statute, not a commission statute. Well, and we know from Weeks that it applies to the possessions of vets, right? Well, right. Weeks applied it very broadly too. That's true. I mean, I don't think it was directly an issue, but I think that there was enough in there to extend it. So, and I think the Fifth Circuit got it right where it would have to be during a commission of a felony for that to even matter. And unless your honors have any questions. Do either of you have any questions? I'm good. I do. Mr. Hayes, do you agree that the BAA's conclusion that the statute was divisible is erroneous? In other words, the statute is indivisible. I believe that they're correct that the statute is divisible as to the weapon. So firearm or ammunition, those parts, those are divisible. And they peaked at the information to determine that because Mr. Aspeler's information only charged him with possessing a firearm or ammunition will suggest it's an element. So in other words, in Florida, what you're saying is that you could be charged with two separate offenses if the possession was of a firearm and a possession of ammunition. Well, I think that the board combined firearm and ammunition together, but I think they were getting more at, I believe Florida statute talks about explosives. Let me see, electric weapon or device. So concealed weapon, electric weapon or device, tear gas gun, that was, those clauses they were saying were divisible. But with respect to firearm or ammunition, it's indivisible. I would say that's probably right. I would say enough where the board assumed that. So yes. Thank you. Unless your honors have any further questions. I don't, thank you. Thank you very much. Mr. Bastine. Thank you. I'll try to address each of those points that came up in turn. Going to the over breadth on the face of the Florida statute, I just remind your honors of the element this where the exception is lost if it's used in any offense. Again, that is contrary to the federal statute. So imagine if Florida had the exact same exception as the federal government. When the Florida defendant has committed any offense with a qualifying antique, it loses that he gets convicted. And that goes all the way down to possession. I'm not sure if the government actually argued, but maybe they didn't that possession is ambiguous. But I think as Chief Judge Pryor pointed out, we've got Bostick and we've got weeks. Bostick's not good law. Yeah, but we should at the time, they clearly would be convicted of merely felon in possession, which is how it works in Florida. But the other thing, so the other thing I wanted to stress is in the Florida system, I guess the hierarchy of the Florida courts, again, the Pardo, the state of Florida, it says the decisions of the district courts of appeal represent the law of Florida until and unless they are overruled by this court. And so Bostick comes along and affirms that someone who clearly had a muzzle loading firearm that would be an antique under the federal definition, he gets sentenced to jail. He wants to go hunting with this thing and it looks like it matches the federal definition, he gets sentenced to jail. And so that's the backdrop in which Mr. Aspelier was convicted. Same, and because of Bostick, that's why Weeks got convicted as well. Because again, it was binding that they find as the factual matter. And so they preserved the constitutional challenge and up the case went. But again, the Florida Supreme Court didn't rule on the constitutional challenge. They ruled on the statutory challenge, which was the issue that had been in Williams and had been the issue in Bostick. And they finally wiped it out six months after Mr. Aspelier was convicted. I have to just touch on, I mean, the government starts with its brief with its citation and it comes back again to this Fifth Circuit unpublished decision. And as we said in our reply brief, that really should not be persuasive at all. They cite to an ambiguous that what the dissent in Bostick, which asserts that the Florida statute is ambiguous in some way. But the Fifth Circuit case was lost on the standard of review because they'd failed to preserve the issue down below. And therefore they couldn't show with clarity what the outcome would have been. And again, in this case, in the immigration context, they can't have, the government can't have it both ways. They've got the burden of proof to prove he is a, Mr. Aspelier was an aggravated felon. If in fact it was ambiguous, which I don't think it was, the fact that they're relying so heavily on this case that says it might be ambiguous undermines their entire theory of deportability. But again, the fact that we had 30 years of consistent precedent in Florida that dictated, including again, these principles that the holdings of the district court, they dictate what the elements were for the trial courts all over Florida. They were binding. We know what the elements were when Mr. Bostick, when Mr. Aspelier went to trial because of Bostick. And for this court to rule that somehow a subsequent change in 2016 would retroactively wipe out that factual reality would be a tremendous injustice because that was not what he was actually convicted of at the time. So I would suggest that we follow the precedent that says that that cannot be the case in the interest, in all interest of fairness. So again, in conclusion, our argument is that whether by looking at the statutory text, again, this transformative exception where the distinction is lost, or looking at the cases in which we know Florida defendants purposely holding muzzle loading weapons thinking that it is legal and they're going to jail for it. You've got the case examples that show that people were prosecuted as we say they were, which is totally dissonant with the federal definition. And therefore we ask the court to please grant the position for review. Thank you, Mr. Besting. We understand the case and have it under submission.